**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RICKY LEE HOLLY
8359 NORTHWEST HIGHWAY 225
OCALA, FL 34482,

Plaintiff,

v.

Case No.

THOMAS CHRISTENSEN, HARLEY LAPPIN
320 FIRST STREET N.W
WASHINGTON, DC 20534,

WILLIE SCOTT, GEORGE SNYDER
RIVERS CORRECTIONAL INSTITUTION
P.O. BOX 840
WINTON, N.C. 27986

Defendants.

## COMPLAINT

Plaintiff, Ricky Lee Holly, for his complaint against the Defendants alleges as follows:

## NATURE OF THE CASE

1. Mr. Holly filed a lawsuit in federal court in North Carolina for what he felt were constitutional violations of his right to be free from cruel and unusual punishment. Even though the lawsuit was ultimately unsuccessful, the Defendants in this case retaliated against Mr. Holly by placing him in solitary confinement, revoking his earned good time, and denying him typical time in a halfway house at the end of his sentence.

2. This is an action for money damages for the constitutional deprivations that Mr. Holly suffered at the hands of the Defendants. Specifically, the Defendants denied Mr. Holly his right of meaningful access to the courts pursuant to the First Amendment, right to due process of law pursuant to the Fifth Amendment, and right to be free from cruel and unusual punishment pursuant to the Eighth Amendment. Mr. Holly petitions the government for redress of grievances, as guaranteed by the United States Constitution pursuant to the cause of action established in *Bivens v. Six Unknown Federal Agents, 403 U.S. 388 (1971)*.

**THE PARTIES**

3. The plaintiff, Ricky Lee Holly, was at all relevant times, a resident of the District of Columbia, and was at all times relevant to this action incarcerated in Rivers Correctional Institution ("Rivers"), a privately run prison located in North Carolina and operated by GEO Group, Inc ("GEO") pursuant to a written contract with the Federal Bureau of Prisons ("BOP"). Moreover, at all times relevant to this action, Mr. Holly was under the care and custody of the BOP, its employees, and the employees of Rivers.

4. DEFENDANT WILLIE SCOTT was employed at Rivers during the first part of Mr. Holly's incarceration as the warden of Rivers and was charged with overseeing the custody and care of Mr. Holly. GEORGE SNYDER was employed at Rivers during the latter portion of Mr. Holly's incarceration as the warden of Rivers and was charged with overseeing the custody and care of Mr. Holly. The above named Defendants are each sued in his capacity as an individual. At all times relevant to this action, DEFENDANTS SCOTT and SNYDER were acting under the color of law.

5.      At all relevant times, DEFENDANTS THOMAS CHRISTENSEN and HARLEY LAPPIN were employed by the BOP and were charged with the custody and care of Mr. Holly while he was an inmate housed at Rivers. The above named Defendants are each sued in their capacities as individuals. DEFENDANT LAPPIN is responsible for overseeing administration of the BOP and approving all BOP policies relating to the treatment of men and women in its care, including placement of prisoners in private facilities throughout the country. DEFENDANT CHRISTENSEN is responsible for overseeing administration of the contract between GEO and the BOP, and GEO's adherence to BOP policies at Rivers. At all times relevant to this action, LAPPIN and CHRISTENSEN were acting under the color of law.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because the claims arise under the Constitution of the United States.

7.      This court has personal jurisdiction over all the Defendants.

8.      Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(b)(2), 28 U.S.C. § 1391(e)(1), and 28 U.S.C. § 1391(e)(2).

## STATEMENT OF FACTS

### A.      D.C. Code Offenders Are in the Custody of the BOP

9.      In 1997, the United States Congress passed the National Capital Revitalization and Self-Government Improvement Act of 1997, Title XI of PL 105-33, 111 Stat. 712 ("Revitalization Act").

10. Now codified in part in D.C. Code 24-101, the Revitalization Act requires that any person who is sentenced to incarceration pursuant to D.C. law be committed to the custody of the BOP and housed in BOP institutions.

11. Pursuant to federal law, the BOP has the authority to designate the location of each prisoner's incarceration.

12. The Revitalization Act requires that the BOP house at least 50% of the felony offenders sentenced in D.C. in private for-profit contract facilities.

**B. GEO's Rivers Correctional Institution**

13. Rivers is a private for-profit facility and is owned and operated by GEO.

14. Rivers is located at 145 Parker's Fishery Rd., Winton, NC 27986.

15. GEO is a publicly held corporation, headquartered in Boca Raton, Florida. Its stock is traded on the New York Stock Exchange under ticker symbol GEO.

16. GEO was originally founded as a subdivision of Wackenhut Corporation under the name Wackenhut Corrections Corporation. Through mense transactions, Wackenhut Corrections Corporation became an independent corporate entity and changed its name to GEO Group Inc.

17. GEO was awarded a federal contract to house low security male D.C. prisoners in 2000 for a duration of three years with seven one-year options. GEO houses most of the prisoners sentenced in D.C.

18. Rivers now houses approximately 1,300 federal inmates, approximately 1,100 of whom are D.C. Code offenders.

### C.     Mr. Holly Filed His Original Federal Lawsuit

19.     In or about November 2001, Mr. Holly was arrested in the District of Columbia on charges of Assault with a Dangerous Weapon.

20.     On July 7, 2002, pursuant to his conviction for violations of portions of the D.C. Code, Mr. Holly was sentenced to four years imprisonment and three years supervised release.

21.     Pursuant to the contract between the BOP and GEO, as a D.C. resident, Mr. Holly was placed in Rivers on August 29, 2002.

22.     At all times relevant to this lawsuit, Mr. Holly was serving a sentence under the D.C. Code.

23.     At the time of his initial intake medical examination at Rivers, Mr. Holly informed the staff that he was a diabetic.

24.     Diabetes is a serious, chronic medical condition that requires medical intervention, treatment, and daily monitoring and can have grave consequences if the proper treatment regimen is not followed.

25.     Mr. Holly had previously suffered from various medical problems as a result of his diabetes, including having experienced hypoglycemic episodes of blacking out.  Mr. Holly explicitly informed the Rivers staff of these problems during his intake examination.

26.     Despite their knowledge of his condition, the Rivers staff, specifically Dr. Gaddy Lassiter, the doctor at Rivers, and DEFENDANT SCOTT, failed and refused to take the necessary steps to treat Mr. Holly's diabetes by not properly administering the

right kinds or amounts of insulin, not properly monitoring his blood sugar levels, and not providing a proper diabetic diet.

27. On August 25, 2003, Mr. Holly filed a *pro se* complaint in the United States District Court for the Eastern District of North Carolina (Western Division), Case number 5:03-ct-00640-FL, alleging deficiencies in the medical care he received at Rivers for his diabetes ("NC Litigation").

28. DEFENDANT SCOTT and Dr. Lassiter were named as defendants in the NC Litigation.

29. DEFENDANT SCOTT and Dr. Lassiter were personally served with process in the NC Litigation on October 17, 2003.

30. Eventually, in *Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006), the Fourth Circuit dismissed Mr. Holly's case, holding that individuals employed by GEO, a private company, although acting under color of state law, were immune from suit for depriving Mr. Holly of his constitutional rights.

**D. Mr. Holly Is Retaliated Against for Exercising His First Amendment Rights**

31. After the Defendants were served with copies of the complaint in the NC Litigation, Mr. Holly began to experience a pattern of severe treatment and deprivation of the few liberties he enjoyed as a prisoner, despite no changes in his own behavior.

32. On October 21, 2003, four days after the Defendants were served with the complaint in the NC Litigation, the Rivers staff handcuffed Mr. Holly with such force and in such a manner that he suffered cuts on his wrists and his skin was rubbed raw.

33.    Two days later, on October 23, 2003, the Rivers staff placed Mr. Holly in solitary confinement for "protective custody," based on a specious claim that a serious threat existed to his safety. Defendants have never disclosed the nature or source of this purported "threat."

34.    One week later, on October 30, 2003, while still in solitary confinement, as a result of Defendants' failure to treat Mr. Holly's chronic diabetes, Mr. Holly blacked out and was rendered unconscious. While he was unconscious, Mr. Holly was not provided with medical treatment; the Rivers staff, however, did place Mr. Holly in handcuffs with such force as to cause him injury.

35.    After regaining consciousness, Mr. Holly found he remained in solitary confinement. Again, he inquired as to the reason he was being placed into solitary confinement, and this time the Rivers staff informed Mr. Holly that the placement was ordered by Nurse Keel, the head healthcare administrator at Rivers.

36.    Subsequently, several members of the non-medical correctional staff at Rivers informed Mr. Holly that Nurse Keel had ordered the placement of Mr. Holly in solitary confinement because he had filed a lawsuit against members of the River staff.

37.    Nurse Keel was at all relevant times under the control and supervision of DEFENDANT SCOTT.

38.    On information and belief, DEFENDANT SCOTT was personally aware of Nurse Keel's and the rest of the Rivers staff's retaliatory actions against Mr. Holly and failed to reprimand them or stop their actions.

### E. Mr. Holly Challenges the Deprivation of His Rights

39. After being informed that he was being placed in solitary confinement in retaliation for filing the NC Litigation, Mr. Holly followed the proper procedure at Rivers to challenge this unlawful retaliation and punishment.

40. Mr. Holly first made an official inquiry to determine the reason for his placement in solitary confinement.

41. In response, on November 5, 2003, Lt. Stevenson, a staff member at Rivers under the control and supervision of DEFENDANT SCOTT, answered that the Rivers staff had placed Mr. Holly in solitary confinement, not for protective custody, but because of Mr. Holly's diabetes.

42. On information and belief, DEFENDANT SCOTT was aware that Mr. Holly had been placed in solitary confinement.

43. This statement was purely pretext. Standard corrections practice is not to use solitary confinement as a medical treatment procedure. Standard corrections practice requires a separate medical unit for treatment of ill inmates. On information and belief, these standards are reflected in BOP policies and in the contract between the BOP and GEO. Additionally, on information and belief, such a medical unit was available at Rivers at the time of Mr. Holly's confinement in solitary.

44. Shortly after informing Mr. Holly that his diabetes "required" that the Rivers staff place him in solitary confinement, the Rivers staff transferred Mr. Holly from the solitary confinement area to the Rivers medical unit. Shortly after this transfer, inexplicably, the Rivers staff transferred Mr. Holly back to solitary confinement.

45.    After being transferred back to solitary confinement for the second time, Mr. Holly again made an official inquiry as to why the Rivers staff believed that they were required to place him in solitary confinement due to his diabetes.

46.    On November 11, 2003, Lt. Stevenson, a correctional officer at Rivers, again informed Mr. Holly that he had been placed in solitary confinement purely for medical reasons.

47.    On information and belief, DEFENDANT SCOTT was aware that Mr. Holly had been placed back in solitary confinement.

48.    On November 13, 2003, Lt. Chance, the Special Housing Officer at Rivers, reviewed Mr. Holly's placement in solitary confinement.  In approving Mr. Holly's continued placement in solitary confinement, Lt. Chance did not identify a specific reason that Mr. Holly's "continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution."  Rather, he stated that this decision was based on "observation" without providing any details.

49.    On November 24, 2003, Lt. Stevenson informed Mr. Holly that only the chief of security or the medical unit staff could explain why he was in solitary confinement.

50.    Despite being told that his diabetes required placement in solitary confinement, on November 25, 2003, the very next day, after thirty-three days of solitary confinement, and with no change in his medical condition or behavior, Dr. Lassiter signed a form that stated Mr. Holly could be released from solitary confinement.

51. In January of 2004, Mr. Holly again filed a request for an explanation of why he had been placed in solitary confinement.

52. In response, the Rivers staff, who received their instructions from DEFENDANTS SCOTT or SNYDER, again informed Mr. Holly that he had been placed in solitary confinement for his medical issues.

53. In late March, 2004, for no legitimate or discernable rational reason, and with no explanation to Mr. Holly, Nurse Keel interfered with Mr. Holly's food service and attempted to stop him from getting the medically-ordered evening snack bag he needed as part of his diabetes management regimen.

54. In April, 2004, again for no legitimate or discernable rational reason, Mr. Holly's ability to keep non-narcotic medication (such as aspirin) on his person was revoked. Instead, he was required to wait in a "pill line" for each dose of medication he needed. The pill line at Rivers is conducted at the same time meals are served. The result of waiting up to forty-five minutes, three times per day, and having to choose between medicine and meals, was that Mr. Holly was unable to manage his diabetes and prevent blackouts, causing further damage to his condition. His official written complaints about this matter were never substantively responded to by either DEFENDANT SCOTT OR SNYDER.

**F. Defendants Must Follow Proper Procedure When Revoking Earned Good Time From Prisoners**

55. Mr. Holly was eligible to earn up to fifty-four days of "good time," *i.e.*, a reduction in total time served based on good behavior, for each year served.

56. The BOP policy is to have a Discipline Hearing Officer ("DHO") at each institution, including for-profit contract facilities such as Rivers.

57.    At the relevant time, the DHO at Rivers was Mr. K. DuBose.

58.    On information and belief, a decision of the DHO to revoke earned good time from a person is subject to a procedural review by the warden of the institution, in this case, DEFENDANTS SCOTT and SNYDER.

59.    In determining the amount of earned good time to take away from an inmate for an infraction, the DHO is required to assess the seriousness of the prohibited act.

60.    An inmate may appeal the loss of earned good time through the BOP's administrative remedy procedure as outlined in BOP Policy Statement 1330.13.

61.    As part of the administration of an inmate's sentence and the calculation of the duration of imprisonment, the BOP and its employees are ultimately responsible for the lawful administration of all earned good time credits.

62.    DEFENDANT CHRISTENSEN was responsible for ensuring that the good time calculations performed by GEO at Rivers were done in accordance with lawful BOP regulations and applicable legal principles.

63.    DEFENDANT LAPPIN is ultimately responsible for insuring that all sentence calculations used to incarcerate BOP inmates, including those sentenced under D.C. Code, are done in accordance with lawful BOP regulations and applicable legal principles.

### G. Defendants Improperly Revoked Mr. Holly's Earned Good Time Credits and Imposed More Time in Solitary Confinement

64. Before he filed the NC Litigation, Mr. Holly had never had any good time credits revoked at any institution in which he was housed while serving his sentence.

65. On July 1, 2004, Mr. Holly suffered an adverse physical reaction to the insulin he was given by the Defendants to treat his diabetes. This reaction caused him to lose partial consciousness and to react violently to those around him.

66. As a result, several officers were called to his cell to restrain him to control his reaction.

67. During the altercation, Mr. Holly reacted violently. Violent action is well known in the medical community as a side effect of low blood sugar.

68. The staff at Rivers was aware of this effect, as evidenced by the fact that immediately following this incident, Mr. Holly was taken to the infirmary for treatment of low blood sugar. This treatment stopped the physical symptoms being experienced by Mr. Holly.

69. Even while having actual knowledge of Mr. Holly's chronic diabetes and that proper treatment of his condition would have stopped the adverse reaction that Mr. Holly experienced, Defendants initiated proceedings to discipline Mr. Holly based on this medical emergency.

70. Based on information and belief, this punitive reaction to Mr. Holly's medical emergency was motivated by animus toward him for filing the NC Litigation.

71. In reviewing this incident, the DHO acknowledged that there was a medical reason for Mr. Holly's actions during the incident. Despite this acknowledgement, the DHO sentenced Mr. Holly to thirty days in solitary confinement

(in addition to the twenty days he had spent there awaiting the hearing) and revoked twenty-seven days of earned good time credits.

72.    On December 17, 2004, Mr. Holly, who was, at the time, confined in the medical isolation unit, was observed to be wiping the viewing camera with some sort of substance. When confronted by the Rivers staff, Mr. Holly began using profanity and throwing objects against the closed door of his cell. The violent nature of his reaction demonstrably resulted from complications of his diabetes.

73.    As a result of this incident, the DHO revoked an additional fourteen days of earned good time credits and sentenced Mr. Holly to a total of thirty additional days in solitary confinement.

74.    On information and belief, if Mr. Holly had not filed the NC Litigation, he would not have been punished for suffering medical complications of diabetes; indeed, he would instead have been offered medical treatment.

75.    On information and belief, DEFENDANT SCOTT was aware that Mr. Holly was being deprived of good time credits in retaliation for filing his lawsuit.

76.    On information and belief, DEFENDANTS CHRISTENSEN and LAPPIN personally were or should have been aware that Mr. Holly was being deprived of good time credits in retaliation for filing his lawsuit.

77.    As "punishment" for filing the NC Litigation, Mr. Holly had a total of at least forty days of earned good time credits revoked from him.

### H. Defendants Retaliated by Taking Away Mr. Holly's Halfway House Time

78. At the end of his sentence, based on standard BOP policy, Mr. Holly would have been confined for a time in a BOP halfway house, otherwise known as a "Community Corrections Center" ("CCC"). Prisoners, barring unusual circumstances, usually spend the last few months of their sentence at a CCC.

79. Placing inmates in CCCs increases public safety by aiding the transition of the offender into the community.

80. The prisoner's unit team makes referrals to CCCs and the final decision making authority is vested in the warden of the institution, in this case DEFENDANT SNYDER, who was the warden of Rivers at the time that Mr. Holly should have been placed in the CCC.

81. Mr. Holly received notice in early 2005 that his CCC time was being denied, due to the retaliatory discipline record he received, *i.e.*, being wrongly disciplined under the pretext that his known medical condition was, instead, bad behavior.

82. On information and belief, Mr. Holly was denied CCC time in retaliation for having filed the NC Litigation.

83. On information and belief, DEFENDANT SNYDER was aware or should have been aware that Mr. Holly was denied CCC time in retaliation for having filed the NC Litigation.

84. Mr. Holly was finally released from Rivers on August 9, 2005, having not been allowed to serve any of his sentence at a CCC.

## FIRST CLAIM FOR RELIEF

### Violation of Mr. Holly's First Amendment Rights

85.    Mr. Holly incorporates by reference paragraphs 1 through 84, above.

86.    Mr. Holly has a clearly established right protected by the First Amendment to the United States Constitution to adequate, effective, and meaningful access to the courts. Moreover, Mr. Holly has a clearly established constitutional right to be free from retaliation for exercising this constitutional right.

87.    Mr. Holly engaged in constitutionally protected conduct by filing the NC Litigation.

88.    Defendants' actions in retaliation against Mr. Holly for filing the NC Litigation would deter a person of ordinary fitness from asserting his constitutional rights in the future.

89.    As a result of Defendants' actions, Mr. Holly suffered the deprivations attendant in being placed in administrative segregation, the loss of earned good time credits and the loss of time in a halfway house.

## SECOND CLAIM FOR RELIEF

### Violation of Fifth Amendment Right To Due Process

90.    Mr. Holly incorporates by reference paragraphs 1 through 89, above.

91.    Mr. Holly has a clearly established right under the Fifth Amendment to the United States Constitution to receive due process of the law before being deprived of good time credits.

92.    Although he was deprived of good time credits, Mr. Holly did not receive the process required by law.

93. Mr. Holly has been damaged by Defendants' unconstitutional actions and is entitled to monetary relief for Defendants' violation of Mr. Holly's clearly established constitutional rights.

**THIRD CLAIM FOR RELIEF**

**Violation of Eighth Amendment**

94. Mr. Holly incorporates by reference paragraphs 1 through 93, above.

95. Mr. Holly has a clearly established right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment.

96. In response to Mr. Holly asserting his right of access to the courts, the Defendants placed Mr. Holly in administrative segregation – solitary confinement – for over fifty-three days.

97. This unjustified punishment in retaliation for Mr. Holly's constitutionally protected conduct in filing the NC Litigation violated his Eighth Amendment rights

98. Mr. Holly has been damaged by Defendants' unconstitutional actions and is entitled to monetary relief for Defendants' violation of Mr. Holly's clearly established constitutional rights.

**JURY DEMAND**

99. Mr. Holly hereby demands trial by jury.

**RELIEF**

**WHEREFORE**, Mr. Holly requests that this Court grant the following relief:

1. Award Plaintiff compensatory damages in an amount to be determined at trial;
2. Award Plaintiff punitive damages in an amount to be determined at trial;

3. Award plaintiff his reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988 in connection with this action; and

4. Grant such other relief as this Court deems just and proper.

Respectfully Submitted,

Paul E. Poirot
D.C. Bar # 459844
McDermott Will & Emery LLP
600 Thirteenth Street, N.W.
Washington, DC 20005-3096
Telephone: 202.756.8370

Deborah M. Golden
D.C. Bar # 470578
D.C. Prisoners' Project
Washington Lawyers' Committee for Civil Rights and Urban Affairs
11 Dupont Circle, Suite 400
Washington, DC 20036
Telephone: 202.319.1000

*Attorneys for Plaintiff*
*Ricky Lee Holly*

Dated: April 20, 2007

**ATTACHMENT F**

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**
Ricky Lee Holly

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ________
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**
Willie Scott, George Snyder, Thomas Christensen, Harley Lappin

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Paul E. Poirot
McDermott Will & Emery
600 Thirteenth Street. NW
Washington, DC 20005-3096
(202) 756-8370

Deborah M. Golden
Washington Lawyers' Committee for Civil Rights &Urban Affairs
11 Dupont Circle, Suite 400
Washington, DC 20036
(202) 319-1000

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES

(PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. *Antitrust***

- ☐ 410 Antitrust

**☐ B. *Personal Injury/ Malpractice***

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**☐ C. *Administrative Agency Review***

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. *Temporary Restraining Order/Preliminary Injunction***

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☒ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil***

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☒ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ Multi district Litigation | ☐ 7Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

This is an action for the redress of grievances, as guaranteed by the United States Constitution pusuant to the cause of action established in Bivens v. Six Unknown Federal Agents, 403 U.S. 388 (1971)

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 **DEMAND $** Check YES only if demanded in complaint **JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction) ☐ YES ☐ NO If yes, please complete related case form.

DATE SIGNATURE OF ATTORNEY OF RECORD [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RICKY LEE HOLLY,

Plaintiff,

v.

THOMAS CHRISTENSEN, HARLEY LAPPIN, WILLIE SCOTT, and GEORGE SNYDER

Defendants.

Case No.

**CERTIFICATE UNDER LCvR 83.2(g)**

I, the undersigned, counsel of record for Ricky Lee Holly, certify that I am providing representation to Mr. Holly without compensation.

Respectfully Submitted,

Paul E. Poirot
D.C. Bar # 459844
McDermott Will & Emery LLP
600 Thirteenth Street, N.W.
Washington, DC 20005-3096
Telephone: 202.756.8370

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RICKY LEE HOLLY,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS CHRISTENSEN, HARLEY LAPPIN, WILLIE SCOTT, and GEORGE SNYDER<br><br>Defendants. | ) | Case No. |

**CERTIFICATE UNDER LCvR 83.2(j)**

I, the undersigned, counsel of record for Ricky Lee Holly, certify that I am personally familiar with the Local Rules of this Court and the materials set forth in Rules LCvR 83.8(b) and 83.9(a).

Respectfully Submitted,

Paul E. Poirot
D.C. Bar # 459844
McDermott Will & Emery LLP
600 Thirteenth Street, N.W.
Washington, DC 20005-3096
Telephone: 202.756.8370